**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jazi Kat 4659 Rockridge LLC, et al., | No. CV-23-00716-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Travelers Casualty Insurance Company of America, et al., | |
| Defendants. | |

Plaintiffs own two buildings in Phoenix that were covered by an insurance policy issued by Defendant. The buildings were damaged in a fire and, according to Plaintiffs, Defendant "consistently delayed coverage and failed to tender the coverage amount(s)." (Doc. 13 at 2). Based on the delay, Plaintiffs filed this suit alleging claims for breach of contract and bad faith. Defendant now seeks a stay while the parties complete the contractually required "appraisal process" regarding the amount of Plaintiffs' loss. The appraisal process is nearing completion and Plaintiffs' bad faith claim will continue regardless of the outcome of the appraisal process. Therefore, a stay of the entire case would impose unnecessary delay. Defendant's motion to stay will be denied.

## BACKGROUND

The parties disagree about some of the factual details, but they agree on the facts relevant to resolving the motion to stay. Plaintiffs own commercial real estate in Phoenix occupied by a large building, identified as the "5314 Building," as well as a smaller building, known as the "5306 Building." Plaintiffs entered into an insurance contract with

Defendant that covered both buildings.  A fire in February 2021 destroyed the 5306 Building and significantly damaged the 5314 Building.  Plaintiffs made an insurance claim and Defendant made "partial payments" on two dates in May 2021.  Plaintiffs believe those payments were insufficient to cover their losses.

According to the insurance contract, if Plaintiffs and Defendant disagree on the amount of a loss, either side "may make written demand for an appraisal of the loss."  (Doc. 11-1 at 128).  That process requires each side "select a competent and impartial appraiser" and those "two appraisers will select an umpire."  The two appraisers make independent determinations of the amount of loss and, if they disagree, the two appraisers "submit their differences to the umpire."  The umpire then agrees with one of the appraisers and that decision is binding.  In April 2022, Plaintiffs demanded an appraisal.  Defendant "accepted the appraisal demand" in June 2022.  (Doc. 1-3 at 3).

The appraisal process remains ongoing, although the parties agree it is nearing completion.  Plaintiffs are frustrated, however, because they believe Defendant is prolonging the process unnecessarily.  According to Plaintiffs, Defendant's "own appraiser appraised the total loss of the 5306 Building for above the policy limit for that building."  (Doc. 13 at 2).  Despite that, the policy limit has not been paid.  Neither side has explained why the appraisal process that began almost a year ago is taking so long nor have they provided an expected end date.

Plaintiffs filed this suit in state court on February 24, 2023.  Defendant requested Plaintiffs dismiss the suit until the appraisal process was completed.  Plaintiffs would not agree to dismiss their claims absent conditions Defendant would not accept.  (Doc. 1-6 at 2-3).  Eventually, Defendant removed the case to federal court and filed its answer.  Defendant then filed its motion to stay, arguing "the amount of Plaintiffs' loss" will be determined in the appraisal process and that issue "predominate[s]" over all other issues in this suit.  According to Defendant, Plaintiffs' breach of contract claim will not be viable if the appraisal process determines Plaintiffs have already received all they are owed.  Defendant also claims, without citation to any supporting authority, the appraisal process

1    will determine "the viability of Plaintiffs' . . . claim for bad faith."[1]  (Doc. 11 at 5).

2                                              **ANALYSIS**

3            Arizona law views "appraisal [as] analogous to arbitration."  *Meineke v. Twin City*

4    *Fire Ins. Co.*, 892 P.2d 1365, 1369 (Ariz. Ct. App. 1994).  *See also Portland Gen. Elec.*

5    *Co. v. U.S. Bank Tr. Nat. Ass'n as Tr. for Tr. No. 1*, 218 F.3d 1085, 1089 (9th Cir. 2000)

6    (state law determines whether an "appraisal" qualifies as "arbitration" under Federal

7    Arbitration Act).  Therefore, "principles of arbitration law" apply to disputes surrounding

8    "an insurance policy appraisal clause."  *Meineke*, 892 P.2d at 1369.  Here, neither party

9    disputes the validity of the insurance policy's appraisal clause, nor do they dispute the

10   amount of Plaintiffs' loss is the sole issue subject to the appraisal clause.  Therefore, the

11   Federal Arbitration Act dictates "the Court must grant a stay regarding" the amount of

12   Plaintiffs' loss.  *Palozie v. State Farm Mut. Auto. Ins. Co.*, 1996 WL 814533, at *7 (D.

13   Ariz. Dec. 2, 1996).  But that does not resolve the motion to stay because Defendant is

14   seeking to stay the entire case, not merely the issue that is subject to the appraisal clause.

15           Plaintiffs' complaint alleges a claim for breach of contract as well as a bad faith

16   claim.  The result of the appraisal process may defeat the breach of contract claim.  For

17   example, if the appraisal process results in an award equal to or less than what Defendant

18   has already paid Plaintiffs, the breach of contract claim likely will no longer be viable.

19   However, there is no possibility the appraisal process will resolve Plaintiffs' bad faith

20   claim.  Even assuming the appraisal results in an award less than what Plaintiffs expect,

21   Plaintiffs will be able to pursue their bad faith claim based on the alleged delays and

22   difficulties in dealing with Defendant during the claims process.  The result of the appraisal

23   process may provide helpful evidence to Plaintiffs or Defendant, but discovery relevant to

24   the bad faith claim will occur regardless of the appraisal result.  The presence of a claim

25   that will need to be resolved regardless of the outcome of the appraisal process weighs

26

27   [1] The lack of supporting authority is understandable because Defendant's position is
     obviously incorrect.  Arizona law has long held an insurer can be held liable for bad faith
28   even when the insurer has paid the entire claim.  *See, e.g.*, *Zilisch v. State Farm Mut. Auto.
     Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000) ("[T]he insurer's eventual performance of the
     express covenant—by paying the claim—does not release it from liability for bad faith.").

against staying the proceedings relevant to that claim.

An additional reason not to stay this case in its entirety is the loss occurred in February 2021, the appraisal process was initiated by Plaintiffs in April 2022, and this lawsuit was filed in February 2023.  A little over two years after the loss, the parties agree the appraisal process is "near completion." (Doc. 15 at 4).  Defendant argues the imminent conclusion of the appraisal process "works in favor of a stay, not against it." (Doc. 15 at 4).  But according to Plaintiffs, Defendant's inappropriate delays in processing their claim led to Plaintiffs invoking the appraisal clause.  And despite being sued in February 2023, Defendant's appraiser still has not completed the process.  Defendant allegedly continues to delay matters by not requiring its appraiser to complete its work in a timely manner.  Thus, Plaintiffs are correct that, based on the present record, a stay of this entire case would reward Defendant, and harm Plaintiff, by imposing more delay.

There is no dispute the Court must stay proceedings regarding the amount of Plaintiffs' loss.  However, other proceedings, such as discovery regarding the bad faith claim, can proceed while the parties await resolution of the appraisal process.  The parties have agreed to the case management dates in the event the stay is denied. (Doc. 14 at 4).  Those dates are reasonable and will be adopted.  The Scheduling Conference set for June 2, 2023, will be vacated.

Accordingly,

**IT IS ORDERED** the Motion to Stay (Doc. 11) is **DENIED** to the extent all proceedings, except those regarding the amount of Plaintiffs' loss, shall continue.

**IT IS FURTHER ORDERED** the Scheduling Conference set for June 2, 2023, is **VACATED**.  The Court will issue a separate Scheduling Order.

Dated this 1st day of June, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge

- 4 -